EJECTMENT.

*Case* 88.

*April* 22.

The case stated.

Taylor's Heirs, &c. *vs* Whiting's Heirs,

APPEAL FROM THE SHELBY CIRCUIT.

*Conveyances.   Witnesses.   New trial.*

JUDGE MARSHALL delivered the Opinion of the Court.

THIS is an appeal by the heirs of William Taylor and others, claiming under them, from a judgment in eject-ment on the demise of the heirs of Thomas Whiting, for the recovery of land held by the appellant, within the patent for 500 acres, granted to John Thurston in the year 1785, to which the lessors made title, and which is the oldest patent on the land.

Comparing the verdict with the instructions of the Court, the jury must be regarded as having found, as they were authorized by the evidence to find, that the patent and deed conveying the title to Thomas Whiting, cover-ed the land in contest, which was in possession of the defendants; that the lessors were the heirs of Thomas Whiting; that some of them were under disabilities at the time when adverse possession was first taken or held under William Taylor, and so continued until within seven years before the commencement of this suit, and that such adverse possession did not commence so long as twenty years before the service of the *declaration* in this case; and the Court having committed no error in instructing the jury as to the inefficacy of a possession short of twenty years, to bar the entry of the lessors in case of such continued disability of some of them, nor in giving or refusing instructions upon other points affect-ing the question of the commencement, extent and effect of the adverse possession of Taylor, which we deem it unnecessary to state, we shall proceed to notice briefly the only objections to the verdict and judgment which have been seriously insisted on in this Court.

When the con-fessions of a par-ty are used as evidence against him by his adver-sary, all that he 1. The defendants, for the purpose of proving that one of the lessors of the plaintiff was *in* Kentucky more than twenty years before the commencement of this suit, ask-ed one of the plaintiffs witnesses, who had been exam-

ined by the plaintiff, whether the lessor, Baggot, had not been in Kentucky many years ago, to which the witness answered, that he had no personal knowledge of the fact, but that Baggot had told him he was in this State in the year 1817; and on being asked by the plaintiffs counsel to state what further Baggot said at the same time, he was permitted, against the objection of the defendants counsel, to answer and state, that Baggot further told him that Col. Toliver was with him at Taylor's house in 1817, and that if Toliver were here he could prove that Taylor told him he was agent for Whiting's heirs, and had the management of their land. To the allowance of this question and answer, the defendants counsel excepted, and now contends that it was erroneous: 1st, On the ground that the witness was not asked by the defendants to state the admissions of Boggot, but did so voluntarily. But the answer of the witness was a response to their question, tending to prove the fact they wished to establish by the question; they did not stop him nor disclaim the use of his statement, which they doubtless would have used, so far as it was available, if it had not been counteracted by the answer to the question objected to. 2d, It is also urged that the detail given by the witness, extended farther than the rule upon the subject allows. But the rule, as laid down by Starkie, is, that when the admission of a party is thus brought out from his witness, by the opposite party, he may, by re-examination of the same witness, prove all that he said in the same conversation, which has a bearing upon the subject matter of the suit: 3 *Starkie on Ev.* 1751. And even if the rule, thus stated, should be deemed too extensive, it certainly could not, without an obvious violation of justice and of the very principle on which the rule is founded, be restricted so far as to say that a party, whose statement is proved as an admission to establish a particular fact, should not be permitted to prove so much of his further statements, in the same conversation, as would obviate the effect of that fact. The additional statement of Baggot, as proved in this case, not only related to the subject matter of the suit, but tended also to explain and qualify the fact admitted in its application to the suit. It, therefore, ex-

TAYLOR'S HEIRS, &c.
*vs*
WHITING'S H'RS.

said at the time of the confession, proved on the same subject, is competent, whether detailed on the examination in chief or coming out on cross examination.

TAYLOR'S HEIRS
&c.
vs
WHITING'S H'RS.

plains and qualifies the admission itself, and could not be excluded by the most limited form of the rule, without destroying the effect of the privilege which the rule intends to secure.

The witness offered by plaintiff in ejectment had purchased part of the land in contest of plaintiff, (in case of success,) on his testimony being objected to, he was *released* from his notes given for the land; held that the bond for title was thereby released, and the witness competent.

2. George Miles, a witness offered by the plaintiff, having, on the interrogation of the defendants, stated that he had a contract with Whiting's heirs for 50 acres of the land, if they succeeded, for which he had given his notes at the rate of $20 per acre, was rejected as incompetent, on the ground of interest; but having afterwards executed a release to Whiting's heirs, which was accepted by one of them then in Court, as agent for the others, releasing them from all liability on account of said contract, he was in this state of things, admitted as a competent witness, though his notes for the price of the land had not been surrendered to him. The defendants having excepted to the opinion of the Court, now contend that the release did not terminate the interest of the witness, and that he was improperly received. But conceding that the contract, as it existed before the release, created an interest in the witness in favor of the plaintiffs success, which rendered him incompetent, still, if the release was effectual to extinguish all liability of Whiting's heirs under the contract, it was equally effectual to extinguish all right which the contract gave to the witness against them. And if, after the release, he would have had no right in the event of the plaintiffs success, to claim the land on payment of the $20 per acre, he could have had no interest on the side of the plaintiff, under this contract. But if, having no right to claim the land in the event of the plaintiffs success, he would, by that event, have become liable upon his notes, his interest was clearly on the side of the defendants.

We think there can be no doubt as to the effect of the release in extinguishing the liability of the Whitings, and the right of the witness. After executing such a release for the purpose, and with the effect of rendering himself thereby a competent witness, he would certainly be estopped by it. And whether the acceptance of the release for the same purpose, and with the same effect, should be regarded as operating, of itself, a rescission of the

contract, or as leaving to the accepting party the right of enforcing payment of the price, without being under any corresponding obligation to convey the land, the legal interest of the witness in favor of the plaintiffs success was terminated. If any presumption is to be indulged beyond the mere fact of the execution and delivery of the release in Court, without an actual surrender of the notes, as stated in the bill of exceptions, it may as well be presumed that the agent for the heirs promised that he would surrender the notes or would not enforce them, as that he promised that the contract should still be executed on the part of the heirs, if they succeeded in the suit. And if it should be presumed that though there was no promise to that effect, the witness may have expected a fulfilment of the contract, notwithstanding his release, such unauthorized expectation would not constitute a legal interest which would go to the competency of the witness, but only a bias which would go to his credit. We are of opinion, therefore, that the Court did not err in admitting the witness as competent.

3. The defendants having read in evidence a deed, dated May, 1821, from John H. Morton, as collector of the direct tax of the United States, to William Taylor, purporting to convey the title of Whiting's heirs to the land now in contest, in virtue of a sale thereof, for the direct tax imposed by the act of Congress of 1813, and having also read the deposition of Harrison Daniel, one of the deputies of said Morton, for the purpose of proving such facts as, under the laws of the United States, would have authorized the sale and conveyance; the Court, on motion of the plaintiffs counsel, instructed the jury that the said deed did not pass the title—thus virtually excluding from the jury the consideration of the evidence read in support of the deed, as well as the deed itself; and the propriety of this instruction is strenuously contested.

It is the established doctrine in regard to such deeds, that they are not even *prima facie* evidence of the preliminary facts which, under the acts of Congress regulating the mode of proceeding in assessing and collecting the tax, are requisite to authorize the sale and convey-

*Margin notes:*

TAYLOR'S HEIRS, &c.
*vs*
WHITING'S H'RS.

Deeds made by marshals for lands sold to satisfy the direct taxes due in 1813, &c. are not *prima facie* evidence that the

TAYLOR'S HEIRS, &c. vs WHITING'S H'RS.

pre-requisites of the law, of advertising, &c. had been complied with, and the party relying on such deed is bound to prove that such pre-requisites had been performed as authorized a sale, &c.

The requisitions of the laws of the U. S.

ance of the land, but that such preliminary facts, on which the authority depends, must be proved *aliunde:* Parker vs Rule's lessee, (9 *Cranch,* 69, 3 *Condensed Reports,* 271;) *Williams, &c.* vs Payton's lessee, (4 *Cond. Rep.* 395.)

By the act of Congress "for the assessment and collection of direct taxes and internal duties," approved July 22, 1813, the several assessors of the tax are required to make out two general lists, one containing the names of all persons liable to pay the tax, who reside within the assessment district, together with the value and assessment of the objects liable to taxation, and the other exhibiting the names of all persons residing out of the collection district owning property therein, together with the value and assessment of the property or amount of direct tax due thereon, which lists are to be delivered to the principal assessors. Kentucky was divided by the act, into ten collection districts; the land in contest lay in the eighth (or Jefferson) district, of which the owners, Whiting's heirs, were not residents. The 17th section of the act requires, that the collector of each district shall, within a prescribed period, be furnished by the principal assessors with one or more of the lists prepared as before directed; and the 21st section prescribes, that within ten days after receiving the collection list, each collector shall "advertise in one newspaper printed in his collection district, if any there be, and by notifications, to be posted up in at least four public places in his collection district, that the said tax has become due and payable, and state the times and places at which he will attend to receive the same, which shall be within twenty days after such notification;" and with respect to persons who shall not attend, according to such notifications, it is made the duty of the collector to apply once at their respective dwellings, within such district, within sixty days after the receipt of the collection list, and demand the taxes payable by them; and if the taxes are not paid within twenty days thereafter, he is authorized to distrain the goods, &c. of the persons delinquent, &c.

The 22d section prescribes the mode of proceeding when goods, &c. sufficient to satisfy the tax upon houses

or lands of persons known and residing in the district cannot be found, and authorizes a sale of the land.

The 23d section enacts, "that with respect to property lying within any collection district, not owned, occupied or superintended by some person residing therein, and on which the tax shall not have been paid for ninety days after the day on which he shall have received the collection lists from the principal assessor, the collector shall transmit lists of the same to one of the collectors within the same State, to be designated for that purpose by the Secretary of the Treasury." And the collector, thus designated, is required to cause notifications of the taxes due as aforesaid, and contained in the lists thus transmitted, to be published for sixty days, in at least one of the newspapers in the State, and the owners of the property on which the tax is due, are permitted to pay it within one year after the day on which the collector of the district where the property lies had notified that the tax had become due on the same:

The 24th section enacts, that where the tax shall have remained unpaid for one year as aforesaid, the collector designated as above, having first advertised the same for sixty days, in at least one newspaper in the State, shall proceed to sell at public sale, &c. By the 25th section, the designated collector is required to deposite with the clerk of the District Court of the United States, in the same State, correct lists of the tracts of land or other real property sold by him, together with the names of the owners or presumed owners, who are allowed two years from the time of sale to redeem the land, on failure of which a conveyance is authorized to be made by the said clerk; but a subsequent act authorizes the collector who made the sale, to make the deed. John H. Morton, who made the sale and deed in this case, was the collector in the State of Kentucky, designated to receive from the other district collectors the lists of taxable lands within their respective districts, of which the owners did not reside within the same district, and on which the tax remained unpaid for ninety days after the list had been furnished to the district collector by the principal assessor. He was not the collector of the district in which the land

now in question was situated, and should have received the list from the collector of that district. It is obvious, therefore, that there were, in this case, at least two officers, the collector of the Jefferson district, in which the land was situated, and the designated collector to whom the list of non-residents' lands was transmitted, to each of whom distinct duties were assigned in the process of collecting or coercing the tax, and the performance of whose respective duties, so far as they are essential to the authority to sell and convey, cannot be established either by the recitals of the deed, or by the general presumption in favor of a public officer, that he has done his duty, but must be directly or indirectly proved by other means.

Without intending to enumerate all the acts or duties of the collector, which should be deemed essential prerequisites to the ultimate sale and conveyance of the land, it is, as we think, manifest that the several advertisements and notifications prescribed by the act of Congress, must be regarded as essential to support this deed, so far as they are applicable to the case of non-resident owners of land within the respective collection districts. Both of the advertisements required to be made by the designated collector, are directly applicable to the case, being in truth required only in regard to the land or names of non-residents of the several districts. And as there is no exception in the requisition, that the district collector shall advertise as to the lands of which the lists shall be returned to him, that the tax is due, &c. this requisition must be regarded as embracing the case of non-residents of the district, having lands within it, as well as that of residents, and as being intended, as well for the benefit of the former as for that of the latter. The law intends, as far as possible, to give to non-residents the same opportunity of paying the district collector, as it gives to residents. It requires and authorizes the district collector to transmit the non-residents' list to the designated collector, only in the event of the tax not having been, in the mean time, paid to him; and if any doubt could otherwise be entertained, that the advertisement was to embrace the tax or list of the non-resident, it is entirely

removed by the proviso in the 23d section, limiting the
time within which the non-resident may pay his tax to the designated collector to one year from the day on which the *collector of the district where the property lies, had no-tified that the tax had become due on the same.*

Now there is, in this case, not the slightest evidence, and not even a recital in the deed, going to show either that the district collector had advertised, either in a newspaper or by notifications posted up as directed, that the tax was due on this or any other property, or that this land was ever entered on any list returned to him, &c. &c. The cases already referred to fully establish the consequence of such a defect of proof to be, that the sale and deed pass no title. And such we deem to have been the true conclusion in the present case; for conceding that an undisputed possession, held for a greater length of time, under a deed of this character, might give to it such strength as would dispense with all other proof of its validity, or of the authority to make it, we do not admit that a possession of less than eighteen years, which was the interval between the date of this deed and the commencement of this suit, could have such effect. And with whatever exactness John H. Morton, the designated collector, may have performed his duties, after the tax list of Whiting's heirs came to his hands, and with whatever precision this may have been proved, this cannot, in any degree, supply either the failure of duty in the district collector, or the failure to prove his performance of his duty, if he did perform it. If he did not give the publicity required by law, to the fact that this tax was due and might be paid to him at a particular time and place, there was no such non-payment of the tax as authorized any of the subsequent proceedings directed by the act. If he gave no notification that the tax was due on this land, then one year from the date of such notification, which was allowed for the payment of the tax, had not elapsed when the land was sold.

Under this view of the case, we deem it necessary only to remark further, on this point, that H. Daniel, whose deposition was read in support of the deed, was the deputy of J. H. Morton, the designated collector, not

professing to know or to speak of any thing that was done by the collector of the Jefferson district, but only as to the acts of his own principal and his deputies; and of these he speaks only in general terms, as that they acted under advice of counsel in regard to their duties, and endeavored to fulfil, and as he believes, did fulfil all the requisitions of the acts of Congress—that he knows J. H. Morton had the non-residents' lists advertised in three newspapers in Kentucky, (none of which, however, were in the Jefferson district,) but he does not know how long the publication was continued; nor does he say that there were two publications, as required by the 23d section of the act, or that there was any reference to this particular land or the tax upon it, in any publication; nor does he make any reference to this particular land, or to the non-payment of the tax upon it, or its sale by the collector; and no newspaper containing any advertisement was produced. Certainly this evidence falls far short of that which is referred to by the Supreme Court of the United States in the case of *Williams* vs *Peyton*, *supra.* as being essential to the support of a sale and deed for taxes. And if the validity of this deed had depended solely on the acts of Morton, we are not prepared to say that the evidence was sufficient to prove, or to authorize a jury to find the facts essential to its validity.

That one of several defendants was surprised, & that a witness, whom the party had summoned, but who did not attend, would give testimony having an important bearing on a fact shown by the parties to be in litigation on the trial, and depending on the credibility of his adversary's witness, and especially where one of many defendants makes a statement of a matter of surprise, is not good ground for a new trial.

4. It is further urged, as a ground for reversing this judgment, that the Court erred in not granting a new trial to the defendants, upon the affidavit of one of them, alledging that he was surprised by the evidence of George Miles, a witness for the plaintiffs, so far as he stated that when William Taylor put him in possession of a part of the land in contest, he claimed to be acting as agent of Whiting's heirs; that he had made no such statement in his deposition in the chancery suit between Whiting's heirs and Taylor; and that affiant did not know that Wm. T. Barbour, who had been summoned as a witness for the defendants, but was not present at the trial, could prove the facts stated in his affidavit. Barbour, in his affidavit, states that he was present when the deposition of Miles, above mentioned, was taken, and that it was read over to him before he signed it; that he was present

in 1816 and 1817, when Miles contracted with Taylor for the land of which he afterwards got possession; that Taylor then and subsequently claimed the land as his own, and contracted in his own right and not as agent, &c. and that Miles always claimed under Taylor, and wished his heirs to carry the contract into effect. Upon these affidavits it is to be remarked: 1st, that if it was intended to suggest that the deposition of Miles, previously taken, would discredit him by its discrepancy with his statement on the trial, no reason is shown why it was not or could not have been used for that purpose; and, 2d, that it is manifest from the course of the trial, that it must have been understood by the active managers on both sides, that the time and manner of taking possession by or under Taylor, were material, if not the principal points to be put in issue by the evidence. In which case, if it had been unknown to all the defendants that Barbour, a witness whom they had summoned, could prove facts materially affecting that issue, their ignorance, unaccounted for, could only have been attributed to negligence, and their subsequent discovery would not have entitled them to a new trial—much less can the ignorance and discovery of one only of several defendants, entitle them to a new trial, when it does not appear either that he had the management of the defence, or that the others were alike ignorant with him. It is also to be remarked, upon the subject of surprise, that it is not shown that the other defendants were surprised by the evidence of Miles, relating to Taylor's claim of agency, and the affidavit of the defendant is subject to the same objection on this point, as in relation to the ground of discovery. It is attempted, however, to aid the affidavit by the fact drawn from the record, that Miles was a defendant until the calling of the cause for trial, when the suit was dismissed as to him; whence it is argued that the remaining defendants must have been ignorant, until the trial commenced, that he would be a witness, and that he would state the facts which he did state. But the mere use of a witness whom the opposite party does not expect to be called on to depose against him, cannot, in any ordinary case, be such surprise as will be ground for a new trial; and where, as

in this case, the statement of such a witness relates to facts known to be involved in the issue, and to which each party is adducing evidence; even if the particular statement of the witness might surprise the party against whom he deposed, this would not authorize the granting of a new trial, at any rate unless it was coupled with the subsequent discovery of evidence to disprove the facts stated by him, or at least with the disclosure of evidence which, though known, would not have been useful but for the introduction of the unexpected witness, and could not be obtained afterwards in time. There is no such discovery or disclosure in this case, as already shown, nor is there even a discovery or disclosure of evidence that could not have been used on the trial, which would go to discredit the witness. Moreover, if the evidence of Miles had been excluded, the case would have been substantially the same upon the evidence, and the affidavits disclose no ground for presuming that on another trial the result would be different.

The Court, therefore, did not err in overruling the motion for a new trial, and there being no error in the record to the prejudice of the appellants, the judgment is affirmed.

*M'Henry and Morehead & Reed* for appellants; *Thruston and Owsley & Goodloe* for appellees.